UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

JORGE HERNANDEZ, §
§
     Plaintiff, §
VS. § CIVIL ACTION NO. 2:13-CV-54
§
KINGSVILLE ISD, *et al*, §
§
     Defendants. §

## OPINION AND ORDER OF DISMISSAL

In this civil rights action filed pursuant to 42 U.S.C. § 1983, plaintiff Jorge Hernandez, a teacher formerly employed by Kingsville ISD, sued the District (KISD), Emilio Castro, Jerrod Barton, and Jennifer Kent. Hernandez claims that KISD and the individual defendants violated his First and Fourteenth Amendment rights and defamed him. Hernandez seeks damages resulting from his discharge from his position at KISD and for defamation.

Defendants moved to dismiss Hernandez' claims pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). The parties filed multiple briefs on the issues. D.E. 5, 6, 7, 19. 20, 24.   All claims are *sua sponte* dismissed on *res judicata* grounds. Alternatively, Defendants' Rule 12(b)(1) motion is denied but their Rule 12(b)(6) motion is granted.

## I.  JURISDICTION

The Court has federal question jurisdiction over the federal claims pursuant to 28 U.S.C. § 1331, and supplemental jurisdiction over the state law claims pursuant to 28

U.S.C. § 1367(a).  All parties consented to the jurisdiction of a United States Magistrate Judge, and the case was reassigned to undersigned United States Magistrate Judge to conduct all proceedings pursuant to 28 U.S.C. § 636(c) (D.E. 10, 13, 16).

## II.  FACTUAL AND PROCEDURAL BACKGROUND

Hernandez was a certified Health Science teacher employed by KISD beginning in the 2001 school year. He had a continuing contract that automatically renewed until it was terminated by action of the KISD School Board in 2011. D.E. 1 at ¶¶ 5, 13, 14, 33. This suit arises out of his termination.

Emilio Castro was the Superintendent of KISD during the relevant time period and was sued in his individual and official capacity. Id. at ¶ 7. Jerrod Barton was Principal at the high school where Hernandez taught during the Spring of 2011. Id. at ¶¶ 8, 16,-21. Jennifer Kent was the Interim Principal at the high school after Barton resigned. Id. at ¶¶ 9, 21-29. Both were sued in their official and individual capacities.

Hernandez supports his claims with Exhibits 1-17 (D.E. 1-1) that are attached to his Original Complaint and referenced therein. Hernandez alleges that his problems with the administration began during the 2010-2011 school year when he noticed that grades on the high school's website "had been changed." D.E. 1 at ¶ 15. He claims he made inquiries to the district administrators but "never received a clear answer." Id. On April 29, 2011, Hernandez raised an issue regarding the addition of a student to his class roster. D.E. 1 at ¶¶ 16-17, Exhibit 1. Hernandez claims that he told Principal Barton that he would not give a grade to a student who had not attended class and that he would be

going public with the information. He claims his communication with Principal Barton was constitutionally protected speech. Id. at ¶ 17.

After the grades discussion and later the same day, Principal Barton orally instructed Hernandez that Hernandez would not be attending a Health Science (HOSA) Leadership Conference in California in June. Hernandez was also directed not to discuss the matter with anyone. Id.  at ¶ 18. After this meeting, according to Hernandez' version of events, he discussed hotel reservations and registration details with other KISD staff and made inquiries with HOSA conference organizers and TEA. Id. at ¶¶ 19-21, 23-25, 29, 32. Hernandez also claims he became aware of irregularities in student make up hours on May 11, 2011, where it appeared that students were getting credit for more hours than they actually made up. Hernandez communicated with administrative staff regarding this matter. Id. at ¶ 26; Exhibits 4-7.

Hernandez was placed on administrative leave on May 24, 2011. D.E. 1 at ¶ 29, Exhibit 9.[1]  The Memo from Interim Principal Kent that notified Hernandez of the change in his status identified multiple instances of Hernandez' failure to obey administrative directives, all of which were related to the HOSA conference, as reasons for his placement on administrative leave. The memo also identified instances of unprofessional communications and insubordination. D.E. 1-1, Exhibit 9.

On May 30, 2011, Interim Principal Kent recommended to Superintendent Castro that Hernandez' contract be terminated. D.E. 1 at ¶ 31, Exhibit 11. On June 23, 2011,

---

[1] Although in his Complaint, Hernandez states the date as May 24, 2010, the letter references May 24, 2011, as does Hernandez in other portions of his Complaint. The letter does not state whether his leave was with or without pay.

Superintendent Castro sent Hernandez a certified letter notifying him of the conduct and the issues that the School Board would consider in deciding whether to terminate Hernandez' employment contract.[2] D.E. 1 at ¶ 33, D.E. 1-1 Exhibits 15, 16. The basis of the district's action was stated to be Hernandez'

> failure to meet the District's standards of professional conduct and his failure to comply with Board policies concerning same. Specifically, you violated express directives provided to you on April 29, 2011, May 6, 2011, May 22, 2011, May 23, 2011, and May 24, 2011, and have violated KISD policy DH (local) which includes DH (EXHIBIT).

D.E. 1-1, Exhibit 15. The letter also gave examples of specific acts or statements that supported reasons for termination,

> 1.  On April 29, 2011, Jerrod Barton met with you and informed you that you were not going to attend the HOSA conference in Anaheim, California this summer. He further instructed you not to discuss the situation with anyone at all. Since then you have repeatedly violated that directive in an openly defiant manner.
>
> 2.  On May 3, 2011, you e-mailed Mr. Barton again asking if you would be going to the conference. Mr. Barton again informed you that you would not be going on the trip representing H.M. King High School or Kingsville Independent School District.
>
> 3.  On May 5, 2011, you confronted Helen Small and claimed she had violated your rights by deleting your registration for the National HOSA Conference. You became very angry and placed yourself in close proximity to Ms. Small. You became very confrontational and threatening to Ms. Small. When she explained to you that she had been directed to register Dalissa Garza by Jerrod Barton, you repeatedly insisted that she register you. You accused her of violating your rights and of breaching the confidentiality of your information. You threatened to file a grievance against her.
>
> 4.  Ms. Small informed you that she was uncomfortable and did not wish to speak to you anymore. Nonetheless you remained in her personal space and

---

[2] Hernandez' Complaint states that the date was June 23, 2010, but the letter is dated June 23, 2011.

conducted yourself in a very threatening manner. Your confrontation of Ms. Small was observed by Norma Castro.

5.   On May 6, 2011, you were written up by Mr. Barton. He reminded you of his previous directives and directed you to follow these directives and to act in a non-confrontational manner towards all employees (based upon your confrontation with Ms. Small on the previous day). Since that time your behavior has only worsened to the point where multiple individuals have voiced their fear of your actions.

6.   In his write-up dated May 6, 2011, Mr. Barton expressly directed you not to discuss any of the details of the trip with any school employees or students.

7.   On May 12, 2011, you emailed Martha Ramirez about the HOSA conference in violation of the previous directives. Further, you misrepresented information relating to the conference.

8.   In your e-mail correspondence of May 12, 2011, you inquired whether the parents of the student were going to the HOSA and whether they had paid for their registration. Because you had previously been directed not to be involved in the conference, there was no legitimate purpose for you to inquire about this matter. Further, these parents had expressed concern that they were not comfortable having you attend the conference.

9.   On May 15, 2011, you emailed various district personnel indicating you had attempted to contact Martha Ramirez, Kingsville Independent School District administration, Chief Jennifer Kent, Karen Griffith and myself on May 13, 2011, about the HOSA registration.

10.  On May 19, 2011, you emailed the Texas HOSA Executive Director and requested a faxed copy of the Medical Liability Release form for the KISD student that was submitted for the 2011 HOSA National Conference.

11.  On May 22, 2011, you e-mailed Norma Castro again insisting that you be registered for the conference and making misrepresentations about conference requirements.

12.  On May 22, 2011, you emailed Chief Kent stating a reason why you would be requesting a Medical Liability Release form for the KISD student in connection with the HOSA conference. In response, Chief Kent e-mailed you that you should not be seeking information about a student in connection with the HOSA conference since you would not be participating

in the event. She directed you to immediately cease contact with anyone outside of KISD regarding the event.

13.  On May 23, 2011, you refused a directive to take back $90 that you gave to the secretary whom you told to register you for the event for which you did not have permission to attend.

14.  On May 23, 2011, you met with Chief Kent. In that conference, you refused to accept the directive that you would not be representing KISD at the HOSA competition. You also refused to comply with the directive to stop e-mailing representatives from TEA and HOSA regarding this matter. Further, you confirmed to Chief Kent that you made the statement, "They said I can't go, just watch me".

15.  On May 23, 2011, you e-mailed a KISD teacher an unprofessional e-mail which caused her to report your conduct as harassment.

16.  On May 24, 2011, you verbally attacked a KISD employee when she relayed a message to you regarding your upcoming hearing.

17.  On May 24, 2011, when Chief Kent intervened during your verbal attack of the employee referenced in item 16, you continued to speak in a belligerent manner.  Chief Kent directed you to remain in your office and you violated the directive by walking out.

18.  On May 31, 2011, you again contacted the Executive Director of Texas HOSA requesting a copy of the KISD student's Medical Liability Release form for the National HOSA Conference.

19.  A number of employees will testify that you engaged in threatening and intimidating behavior toward them and treated them in a hostile manner.

D.E. 1-1 Exhibit 15. The letter then identified eight witnesses from the KISD, and mentioned but did not specifically identify out-of-district witnesses who "observed your inappropriate and unprofessional conduct and/or were actually subject to it." Id.

Hernandez requested a hearing. An Independent Hearing Examiner conducted the hearing on September 21, 2011. Before the hearing, the parties had the ability to engage

in discovery and take depositions. Tex. Educ. Code Ann. § 21.255 (Vernon 2012). After the hearing, the Hearing Examiner issued his recommendation. D.E. 5-1. Hernandez was represented by counsel during the proceedings. Id. at p. 1.

The Hearing Examiner made findings of fact and issued conclusions of law. The Hearing Examiner concluded that KISD met its burden of proof and good cause existed for termination of Hernandez' employment on the following grounds: failure to meet the District's standards of professional conduct, failure to comply with Board policies concerning the same, and Hernandez' insubordination in response to his supervisor's directives. D.E. 5-1 at p. 18. The Hearing Examiner recommended the Board adopt his findings of fact and conclusions of law and further recommended that an order be entered terminating Hernandez' employment. Id. After a closed hearing at which Hernandez and his counsel were present and were heard in opposition to the Hearing Examiner's findings and conclusions, the Board accepted the recommendations and terminated Hernandez' employment on October 28, 2011. D.E. 1-1, Exhibit 16.

Hernandez appealed to the Commissioner of Education. See D.E. 5-2. He was represented during those proceedings by his current counsel. Hernandez filed a bare bones petition for review that did not include any citations to the record and did not attack any of the Hearing Examiner's evidentiary rulings. Id. Hernandez did not file a brief before the Commissioner. KISD moved to dismiss the petition. Hernandez did not

respond. Id. at p. 2. The Commissioner issued conclusions of law[3] and dismissed Hernandez' appeal on January 5, 2012. D.E. 5-2 at p. 2.

Hernandez filed suit in federal district court in July 2012 against KISD, Emilio Castro, Jerrod Barton, Jennifer Kent, Sylvia Perez, Velma Salinas, Dolores Hernandez, Michele Alvarez, Karen Griffith,  and Helen Small, alleging violations of his First, Fourth, and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. D.E. 1 (12-CV-248). Hernandez alleged that he was assigned to teach classes that he was not trained to teach, in addition to the allegations in this present suit. Id. Hernandez also claimed the individual defendants defamed him. Id. at ¶¶ 69-71.  In summary, Hernandez urged the same claims raised in the present suit as in the previous suit, in addition to other claims against additional defendants.  The Defendants moved to dismiss Hernandez' Complaint pursuant to Rule 12(b) on the same grounds urged in the present case and on additional grounds related to the additional claims.  D.E. 7 (12-CV-248).  Hernandez did not respond to the motion to dismiss.  A failure to respond to a motion indicates no opposition to the motion according to the Local Rules of the Southern District of Texas.

---

[3]   1.The Commissioner lacks jurisdiction over this case under Texas Education Code section 21.301.
2.The Conclusions of Law drafted by the Independent Hearing Examiner and adopted by Respondent's Board of Trustees are adopted as if set out in full.
3.Briefing is an administrative remedy provided in subchapter G, chapter 21 appeal.  Tex. Educ. Code § 21.301(c); 19 Tex. Admin. Code 157.1058.
4.The Petition for Review does not meet the requirements for a brief.  19 Tex. Admin. Code 157.1058.
5.Petitioner has failed to exhaust administrative remedies by not briefing the case.
6.This case should be dismissed for failure to exhaust administrative remedies.  19 Tex. Admin. Code § 157.1056(a).
Id.

L.R. 7.4.[4] See D.E. 8 (12-CV-248). The motion was granted on September 28, 2012. Id. No leave was sought to file a late response to the motion to dismiss, no request to amend the complaint was ever made, no post judgment motions were filed, and no appeal was ever pursued.

Hernandez filed the present action in February 2013 against KISD, Castro, Barton, and Kent. The parties held oral argument on June 28, 2013, via telephone conference, after which additional briefing was filed. Minute Entry June 28, 2013; D.E. 17, 19, 20 and 24.

## III.  *RES JUDICATA*

Though not raised by the parties, it is clear that Plaintiff's claims are barred on *res judicata* grounds and precluded by the judgment of the District Court in Cause No. 12cv54.[5]  "If a court is on notice that it has previously decided the issue presented, the court may dismiss the action *sua sponte*, even though the defense has not been raised." Arizona v. California, 530 U.S. 392, 120 S.Ct. 2304, 2318 (2000); accord Boone v. Kurtz, 617 F.2d 435, 436 (5th Cir. 1980) (dismissal *sua sponte* by the court on *res judicata* grounds is permissible in the interest of judicial economy where both actions

---

[4]  "LR7.4 Responses. Failure to respond will be taken as a representation of no opposition. Responses to motions
    A. Must be filed by the submission day;
    B. Must be written;
    C. Must include or be accompanied by authority; and
    D. Must be accompanied by a separate form order denying the relief sought."
Id.

[5] Defendants argued that the federal lawsuit was barred on *res judicata* grounds because of the administrative proceedings, but did not argue that the lawsuit was barred because of the findings in the earlier federal lawsuit.

were brought before the same court);  Mobray v. Cameron County, Texas, 274 F.3d 269, 281 (5th Cir. 2001) (same); Carbonell v. Louisiana Dept. of Health & Human Resources, 772 F.2d 185, 189 (5th Cir. 1985) (same); see also LaCroix v. Marshall Cty, Ms., 409 F. App'x. 794 (5th Cir. Feb 3, 2011) (per curiam) (designated unpublished).

In the prior lawsuit, all of Plaintiff's claims were dismissed pursuant to FED. R. CIV. P. 12(b)(1) and 12(b)(6).  A dismissal pursuant to Rule 12(b)(6) operates as an adjudication on the merits.  Hall v. Tower Land Investment Co., 512 F.2d 481, 483 (5th Cir. 1975) The prior judgment operates to preclude all issues that either have been litigated or should have been litigated in the prior suit.  In re Southmark Corp. 163 F.3d 925, 934 (5th Cir. 1999) (citing Super Van Inc. v. San Antonio, 92 F.3d 366, 370 (5th Cir. 1996)).

*Res* Judicata is proper when all of the following elements are met:  (1) the parties are identical or in privity; (2) the judgment in the prior action was rendered by a court of competent jurisdiction; (3) the prior action was concluded to a final judgment on the merits; (4) the same cause of action was involved in both actions.  Southmark, 163 F.3d at 934 (citing Swate v. Hartwell, 99 F.3d 1282, 1286 (5th Cir. 1996)).  All four elements are present here.  Plaintiff could have sought leave to file a late response or amend his complaint, or he could have filed post-judgment motions and appealed the final judgment of the District Court in the prior lawsuit.  He did none of those things.

Accordingly, Plaintiff's lawsuit is *sua* sponte dismissed in its entirety on *res judicata* grounds.  Alternatively, the Defendants' motion to dismiss will be addressed.

## IV.  MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

Defendants filed a motion to dismiss Hernandez' Complaint pursuant to Rules 12(b)(1) and 12(b)(6).  When a Rule 12(b)(1) motion is filed in conjunction with a Rule 12(b)(6) motion, courts must consider the jurisdictional challenge first to prevent "a court without jurisdiction from prematurely dismissing a case with prejudice." Ramming v. United States, 281 F.3d 158, 161 (5th Cir. 2001) (per curiam); McCasland v. City of Castroville, 478 Fed. App'x. 860, 860-61 (5th Cir., June 18, 2012) (per curiam) (designated unpublished).

The court "may find that subject matter jurisdiction is lacking based on '(1) the complaint alone; (2) the complaint supplemented by undisputed facts evidenced in the record; or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts.'" Randall D. Wolcott, M.D., P.A. v. Sebelius, 635 F.3d 757, 762 (5th Cir. 2011) (internal citations omitted). The party asserting jurisdiction bears the burden of proof. Ramming, 281 F.3d at 161.

The District's motion pursuant to Rule 12(b)(1) is limited; it seeks dismissal only of Hernandez' claim that his Fourteenth Amendment liberty interest was violated by the District's failure to provide him due process. The Defendants claim this Court does not have subject matter jurisdiction over the § 1983 claim because Hernandez' claim "concerns school laws of the state and Plaintiff did not exhaust his administrative remedies." D.E. 5 at pp. 3, 8-9.

It is not disputed that Hernandez failed to exhaust his administrative remedies pursuant to the Texas Education Code. Although Texas courts recognize that the Texas

Education Code gives exclusive jurisdiction to the agency and that a plaintiff is required to exhaust administrative remedies before the state district courts have jurisdiction,[6] Hernandez claims that exhaustion is not a prerequisite to bringing a constitutional claim pursuant to 42 U.S.C. § 1983. See D.E. 6. Hernandez relies on Patsy v. Board of Regents of the State of Florida, 457 U.S. 496 (1982).

In Patsy, the Court "conclude[d] that exhaustion of state administrative remedies should not be required as a prerequisite to bringing an action pursuant to § 1983. Id. at 516. The Fifth Circuit has recently reaffirmed that plaintiffs in § 1983 claimants are not required to exhaust administrative remedies as a prerequisite to filing federal suits. Bowlby v. City of Aberdeen, Miss., 681 F.3d 215, (5th Cir. 2012) ("exhaustion of state remedies is not required before a plaintiff can bring suit under § 1983 for denial of due process"); Griffen v. Big Spring Indep. Sch. Dist., 706 F.2d 645, 649 (5th Cir. 1983). Defendants' Rule 12(b)(1) motion to dismiss for failure to exhaust is DENIED.

---

[6] "Texas requires an aggrieved party to exhaust all remedies provided under the applicable administrative scheme if the claim (1) concerns the administration of school laws, and (2) involves questions of fact." Mission Indep. Sch. Dist. v. Diserens, 144 Tex. 107, 111, 188 S.W.2d 568, 570 (1945); Farran v. Canutillo Indep. Sch. Dist., ––– S.W.3d –––, 56 Tex. Sup. Ct. J. 1174, 2012 WL 4609203 at *3 (Tex., Aug. 30, 2013) (Plaintiff's "contract claim was based on an employment contract provision stating that he could only be terminated for cause. School district employees like Farran, alleging a breach of an employment contract where facts are in dispute, generally must exhaust administrative remedies by bringing an appeal to the Commissioner," affirming dismissal on plea to jurisdiction).

## V.   RULE 12(b)(6) MOTION TO DISMISS

### A.   Standard for Dismissal

"A plaintiff fails to state a claim upon which relief can be granted when the complaint does not contain 'enough facts to state a claim to relief that is plausible on its face.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555). Although the "court must accept as true all of the allegations contained in a complaint, that acceptance does not apply to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (internal quotations and citations omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Ashcraft, 556 U.S. at 679.

### B.   Motion to Dismiss Hernandez' § 1983 Claims Generally

Defendants attack Hernandez' § 1983 claims generally  on several grounds: 1) the Complaint does not state a § 1983 against KISD because Hernandez does not claim a policy or custom by a policymaker that caused infringement of Hernandez' rights, 2) the claims against the individual defendants Castro, Barton, and Kent in their official capacities are redundant, and 3) Plaintiff's speech is not protected by the First Amendment and the individual defendants are entitled to qualified immunity.

**C.**      **Motion to Dismiss KISD and Official Capacity Claims**

A local government entity may be liable under § 1983 "if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation. Connick v. Thompson, — U.S. ----, 131 S.Ct. 1350, 1359 (2011); Monell v. New York City Dept. of Social Servs., 436 U.S. 658, 692 (1978). But, "local governments are responsible only for 'their own illegal acts.'" Connick, 131 S.Ct. at 1359 (citing Pembaur v. Cincinnati, 475 U.S. 469, 479 (1986)). A plaintiff who seeks to impose liability on local governments under § 1983 must prove that "action pursuant to official municipal policy" caused their injury. Connick, 131 S.Ct. at 1359 (citing Monell, 436 U.S. at 691).

"A school district has no vicarious liability under § 1983. Rather, it is liable for the unconstitutional conduct of its policymakers, including persons to whom it has delegated policymaking authority in certain areas." Barrow v. Greenville Indep. Sch. Dist., 480 F.3d 377, 380 (5th Cir. 2007) (citing Monell, 436 U.S. at 689. Whether a particular actor has policymaking ability is a question of state law. Jett v. Dallas Indep. Sch. Dist., 491 U.S. 701,737 (1989).

The Texas Education Code provides that public schools of an independent school district shall be under the control and management of a board of trustees. Tex. Educ. Code Ann. § 11.051 (2007).[7]   Neither the superintendent, the principal or any staff

---

[7] (a) An independent school district is governed by a board of trustees who, as a body corporate, shall:

　　　　(1) oversee the management of the district; and

member is delegated policy making authority. The Trustees "as a body corporate have the exclusive power and duty to govern and oversee the management of the public schools of the district." Tex. Educ. Code Ann. § 11.151. The Board "*shall . . .* make decisions relating to terminating the employment of district employees employed under a contract to which Chapter 21 applies . . . ." Id. at (b)(14) (emphasis added).

A school superintendent is charged with implementation of the policies created by the Board. Tex. Educ. Code Ann. § 11.1512. Although a district's employment policy may delegate to the school superintendent the sole authority to make recommendations to the Board, the Code makes clear that it is the Board that has the ultimate authority to accept or reject those recommendations. Tex. Educ. Code Ann. § 11.1513(a)(2), (b); Barrow, 480 F.3d at 380-81; Jett v. Dallas Indep. Sch. Dist., 7 F.3d 1241, 1245 (5th Cir. 1993); Mirelez v. Bay City Indep. Sch. Dist., 992 F. Supp. 916, 919 (S.D. Tex. 1998).

Although Hernandez alleges that KISD authorizes school principals to recommend teacher contracts for renewal or non-renewal to the Superintendent, Texas law requires the school board to act on those recommendations. Hernandez has not alleged conduct by the KISD policymaker, the Board of Trustees, that violated his constitutional rights under

---

(2) ensure that the superintendent implements and monitors plans, procedures, programs, and systems to achieve appropriate, clearly defined, and desired results in the major areas of district operations.

(a-1) Unless authorized by the board, a member of the board may not, individually, act on behalf of the board. The board of trustees may act only by majority vote of the members present at a meeting held in compliance with Chapter 551, Government Code, at which a quorum of the board is present and voting. The board shall provide the superintendent an opportunity to present at a meeting an oral or written recommendation to the board on any item that is voted on by the board at the meeting.

Id.

the First or Fourteenth Amendments of the United States Constitution. Additionally, because Hernandez does not make any claim of unconstitutional policy or custom adopted by or promulgated by the Board of Trustees, he has failed to state a § 1983 claim against KISD. See Connick, 131 S.Ct. at 1359. Hernandez' § 1983 claims against KISD are dismissed pursuant to Defendants' Rule 12(b)(6) motion.

The individual defendants, Castro, Barton and Kent, are sued in their official capacities. The official claims against them are duplicative of Hernandez' claims against KISD. Hafer v. Melo, 502 U.S. 21, 25 (1991) (official capacity lawsuits are alternative means of pleading action against governmental entity); New Orleans Towing Ass'n. v. Foster, 248 F.3d 1143 at *5 (5th Cir., Feb. 6, 2001) (designated unpublished). Hernandez' § 1983 claims against Castro, Barton and Kent in their official capacity are dismissed pursuant to Defendants' Rule 12(b)(6) motion.

**D.    Motion to Dismiss Hernandez' Claim for Retaliation for Exercise of First Amendment Rights**

    1.  *Sufficiency of Hernandez' First Amendment protected speech claim*

Defendants Castro, Barton, and Kent challenge Hernandez' claim of retaliation based upon his First Amendment rights on the ground that Hernandez' speech was not constitutionally protected. To establish a cause of action under § 1983 for an employee's First Amendment claim of retaliation, a plaintiff has the burden of showing: 1) that he suffered an adverse employment action; 2) as a result of speech involving a matter of public concern; 3) that his interest in commenting on the matter of public concern outweighed the defendant's interest in promoting efficiency, and 4) that the adverse

action was motivated by the protected speech. <u>Foley v. Univ. of Houston Sys</u>, 355 F.3d 333, 341 (5th Cir. 2003); <u>Harris v. Victoria Indep. Sch. Dist.</u>, 168 F.3d 216, 220 (5th Cir. 1999).

Because Defendants' contest element two of Hernandez' cause of action for First Amendment retaliation, the Court addresses only whether Hernandez' speech was on a matter of public concern. Speech that is primarily motivated by, or primarily addresses the employee's own employment status rather than a matter of public concern does not give rise to a cause of action under § 1983. <u>Connick v. Myers</u>, 461 U.S.138, 147 (1983)23; <u>Teague v. City of Flower Mound</u>, 179 F.3d 377, 383 (5th Cir. 1999). Furthermore, when public employees make statements pursuant to their official duties, "the employee is not speaking as a citizen for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." <u>Garcetti v. Ceballos</u>, 547 U.S. 410, 418 (2006); <u>Davis v. McKinney</u>, 518 F.3d 304, 312 (5th Cir. 2008); <u>Nixon v. City of Houston</u>, 511 F.3d 494, 498-99 (5th Cir. 2007); <u>Williams v. Dallas Indep. Sch. Sch. Dist.</u>, 480 F.3d 689, 692 (5th Cir. 2007); <u>accord Williams v. Riley</u>, 275 Fed. App'x. 385, 389 (5th Cir., Apr. 25, 2008) (per curiam) (designated unpublished). "[B]efore asking whether the subject-matter of particular speech is a topic of public concern; the court must decide whether the plaintiff was speaking 'as a citizen' or as part of [his] public job." <u>Davis</u>, 518 F.3d at 312.

A number of factors guide a court in determining whether an employee is speaking pursuant to his official duties: the relationship between the topic of the speech and the employee's job; whether the employee spoke internally up the chain of command

at his workplace; and whether the speech resulted from special knowledge gained as an employee. See Davis, 518 F.3d at 312–14. That an employee's speech occurs at work is not dispositive; employees in some cases "may receive First Amendment protection for expressions made at work." Garcetti, 547 U.S. at 418. Moreover, even if speech is "not necessarily required" by an employee's job duties, it is not protected if it is sufficiently related to them. Charles v. Grief, 522 F.3d 508, 513 (5th Cir. 2008) (discussing Williams, 480 F.3d at 693). Whether an employee is speaking as a citizen or pursuant to his employment is a question of law for the Court to resolve, even though it "involves the consideration of factual circumstances surrounding the speech at issue." Id.

Recent Fifth Circuit cases involving communications within an employee's supervisory hierarchy have generally considered communications to be pursuant to official duties when the subject matter relates to activities within an employee's purview and is made within his chain of command. See Briscoe v. Jefferson Cty, 500 Fed. App'x. 274, 277-78 (5th Cir., Dec. 7, 2012) (per curiam) (designated unpublished) (affirming dismissal of retaliation complaint of administrative secretary in precinct who reported unaccounted-for fuel to her supervisor and to county auditor after district court found speech to be pursuant to her official duties when used to create report for maintenance department as described in pleading); Umoren v. Plano Indep. Sch. Dist., 457 Fed. App'x. 422, 426 (5th Cir., Jan. 6, 2012) (per curiam) (designated unpublished) (summary judgment for defendants affirmed on free speech retaliation claim when employee speech within district related to job duties and substitute teacher policies, speech to EEOC and other agencies concerned same topics and found not to involve matters of public

concern); Elizondo v. Parks, 431 Fed. App'x. 299, (5th Cir., June 27, 2011) (per curiam) (designated unpublished) (affirming summary judgment against employee of UTSA after finding communications to supervisor to be official speech related to potential transfer, despite employee's claim that such transfer violated terms of federal grant funds); but see Haverda v. Hays Cty, 723 F.3d 586, 591 (5th Cir. 2013) (reversing summary judgment where corrections employee wrote letter to editor critical of candidate for sheriff and claimed it was motivating fact in his demotion); Davis v. McKinney, 518 F.3d 304, 309-10, 316-17 (5th Cir. 2008) (holding employee speech may be mixed).

A head coach's memorandum to the office manager and principal relating to the athletic budget and the problems he had performing his duties due to his inability to determine the amount in the athletic account was considered to be speech pursuant to his official duties. Summary judgment was granted on his claim of First Amendment retaliatory discharge. The district court's grant of summary judgment was affirmed. Williams v. Dallas Ind. Sch. Dist., 480 F.3d at 694. The speech at issue was determined to be focused on the coach's responsibilities related to his job and his complaints related to his ability to perform as required.

Hernandez contends that Principal Barton retaliated against him for the grades discussion by setting him up to be terminated. Hernandez claims that Barton's directive to Hernandez not to discuss with anyone the school's decision to disallow his attendance at the HOSA National Leadership Conference was intended to be impossible for Hernandez to comply with such that Hernandez would  necessarily violate it and Barton would have a pretext to terminate him. Original Complaint at ¶¶ 15, 17, 18, 20, 40.

Hernandez claims that the following protected speech caused retaliation in violation of

his First Amendment rights,

15. During the 2010-2011 school year Hernandez had noticed that student's grades had been changed on the H. M. King high school's web page. Plaintiff had made several inquires to District administrators about this situation but never received a clear answer.

16. However, on April 29, 2011, Hernandez discovered a student's name on his class roster that had been inactive since December 1, 2010; Hernandez was more persistent in receiving an answer. Hernandez first sent an e-mail to Norma Hughes, the counselor at the high school, asking why the student's name was placed on his roster. Ms. Hughes responded to Hernandez by telling him to ask the high school principal, Mr. Jerrod Barton. EXHIBIT 1

17. Hernandez then had a discussion with Mr. Barton during which Hernandez made it clear that he was not giving a grade to a student that had not attended his class. Hernandez also stated to Mr. Barton that he would be going public with this information. The discussion with Mr. Barton and any further reporting to others persons is constitutionally protected speech. This matter is of public concern, and certainly not in furtherance of Plaintiff's job.

18. After this discussion with Mr. Barton, Plaintiff suddenly began facing a hostile work environment at the high school from the school administration. The hostility began later that same day, when Hernandez was called into Mr. Barton's office and was given two verbal directives. First, Mr. Barton instructed Plaintiff that he was not going to attend the June HOSA National Leadership Conference in Anaheim, California. Mr. Barton also ordered Hernandez not to discuss this situation with anyone at all.

26. On May 11, 2011 Hernandez discovers another questionable activity occurring at H.M. King high school. The high school administration appeared to be giving students more hours for absences than the students were actually making up after school. EXHIBITS 4, 5, 6 and 7 are an exchange of e-mails between Velma Salinas and Hernandez in which Hernandez has indicated he was not going to give anymore credit to the students than the actual hours stayed after school.

D.E. 1 ¶¶ 15-18, 26. Hernandez also alleged the following,

34. Plaintiffs re-allege and incorporate the allegations set out in Paragraphs 1-33 above and Paragraphs 35-40 below

35. Plaintiff questioned Defendant Barton about a student's name appearing on his class roster, after which Defendant Barton dictated two directives to Plaintiff which were purposely vague, and overbroad so that it would be impossible for Plaintiff to comply. Defendant Barton's motive was to retaliate, discredit, and make the workplace intolerable for Hernandez to continue working.

36. Defendant Kent continued Mr. Barton's retaliation after Barton resigned. However, when Plaintiff confronted Ms. Kent about giving students more credit for absences than they had made up the retaliation became more severe. Ms. Kent made accusations that were totally unfounded, distorted, and false.

39. Defendants Barton and Kent took retaliatory action to punish Plaintiff when Plaintiff was not silent on matters of public concern.

40. Defendants would not have taken these actions if Plaintiff would not have spoken out on his opinions. Defendants did not take these against any other teacher in the district. Defendants plotted to expressly punish and injure Plaintiff for his questioning the changing of grades and attendance records in the high school.

41. Plaintiff has been injured by Defendants' actions taken with malicious intent or callous disregard for the rights of Plaintiff, as more fully explained above, particularly in paragraph 34, and is entitled to compensatory damages of $500,000 and punitive damages of $200,000 Plaintiff is entitled to reasonable attorney fees under 42 U.S.C. § 1988.

Id. at ¶¶ 34-41.

The first question is whether Hernandez states a claim of constitutional violation by Superintendent Castro, Principal Barton and Interim Principal Kent in their individual capacities. Hernandez alleges that all three individual Defendants had a vendetta against him  that resulted in his termination. Complaint at ¶ 22. That allegation is followed by a description of events from May 5, 2011, through May 31, 2011. Id. at ¶¶ 23-31.

### a.      Emilio Castro, Superintendent

Hernandez' sole fact-based allegation involving Defendant Castro is that he received Interim Principal Kent's recommendation that Hernandez' employment contract be terminated and later, Castro sent Hernandez a letter notifying Hernandez of the conduct that the KISD Board would consider in deciding whether to terminate his contract. Id. at ¶¶ 31, 33. Hernandez does not allege any retaliatory motive or even any knowledge by Castro of Barton and Kent's allegedly retaliatory motives. Moreover, Castro's correspondence, attached to the Original Complaint displays no evidence of retaliatory motive. As a result, Hernandez fails to state any claim against Castro in his individual capacity. Defendants' Rule 12(b)(6) motion as to Hernandez' First Amendment retaliation claim against Emilio Castro in his individual capacity is granted.

### b.      Jerrod Barton, Principal and Jennifer Kent, Interim Principal

As to Principal Barton, Hernandez alleges a retaliatory motive directly resulting from their conversation regarding changes to student grades. D.E. 1, Original Complaint at ¶ 18. Hernandez alleges that his speech was on a matter of public concern such that it was protected by the First Amendment and alleges "it was not in furtherance of his job."

The motion to dismiss alleges that Hernandez' speech was not a matter of public concern and therefore was not constitutionally protected. D.E. 5. The Defendants further allege that the statements in Hernandez' emails and in his later conversation with Principal Barton "were made pursuant to Plaintiff's official duties." Id. at ¶¶ 16-17.  The court agrees.

Hernandez alleges he first noticed that student grades were changed on the high school's website. D.E. 1 at ¶ 15. Additionally, Hernandez alleged that a student name appeared on his roster and he refused to give a grade to a student who was not enrolled in his class. Id. at ¶¶ 16, 17. Then Hernandez claims that he had a discussion with Principal Barton that included the issue regarding the student in his class, but also regarding "the changing of grades and attendance records in the high school." Id. at ¶¶ 17, 40.

Teacher communications with administration personnel regarding attendance and grades for students assigned to them is related to a teacher's job. See Charles, 522 F.3d at 513; Davis, 518 F.3d at 312-14. However, information regarding the full scope of teacher official duties is not part of the pleadings, nor is it established by law.[8] If Hernandez were complaining about grade changes for persons not his students or attendance records for students who were not his responsibility, this might be an open question; however, all of the attachments to Plaintiff's complaint, the e-mail exchanges and other correspondence between Plaintiff and KISD staff relate to Hernandez's own students, and to Hernandez's refusal to certify that other students (whether Hernandez's students or not) who were scheduled to make up attendance hours under Hernandez's supervision did so when they did not.  More importantly, Plaintiff has never, in the prior lawsuit or in the present one, argued that his First Amendment speech claims related to students not assigned to him, or not his responsibility.  Hernandez has never alleged that he had

---

[8] The Texas Education Code, Subchapter I (Duties and Benefits) does not state the responsibilities of classroom teachers in those areas.  21 Tex. Educ. Code Ann. §§ 21.401-415.

knowledge of the changing of grades for students not assigned to him.  In the exhibits attached to Plaintiff's complaint Hernandez refers to his refusal to give a grade to a student who did not attend his class and his own refusal to give make up credit to students who did not earn it.  Finally, Plaintiff has never requested or suggested that if given an opportunity to amend his complaint, he would allege retaliatory events after he complained of activities involving "other" students not his responsibility.

The district court in Williams v. Riley, granted a 12(b)(6) motion and dismissed a jailer's claim of retaliatory discharge after she complained to persons in her chain of command regarding mistreatment of a prisoner by other jail personnel. 275 Fed. App'x. at 386-389. The Fifth Circuit reversed, holding that whether the jailer's speech was pursuant to or sufficiently related to her official duties was not established. Id. at 389. Although the defendant(s) in Riley, included the official job description with their motion to dismiss and Hernandez did not, Hernandez has never stated that his "speech" involved students other than his own, or students over whom he had responsibility.

To the extent that Hernandez's communications were solely about students assigned to him or students whose activities fell within his supervision, his communications appear to fall within the official duties excluded from First Amendment protection in Garcetti.  Because Hernandez' speech falls within the parameters of Garcetti, this Court need not consider whether his speech was on a matter of public concern.

Reading Hernandez' complaint in the light most favorable to him, as required, the Hernandez has not stated a plausible First Amendment retaliation claim against Barton or

Kent.  Hernandez alleged that Kent's actions against him increased after he discussed with Interim Principal Kent student absences and the practice of giving students more make up credit than the students earned. Hernandez' further alleged (D.E. 1 at ¶¶ 28, 36) that Kent retaliated against him for his communications related to student make up work and credit for absences, as well as for Hernandez' communication with Principal Barton. Id. at ¶ 29. All of the exhibits attached to Hernandez' Complaint regarding student absences (D.E. 1-1, Exhibits 4, 5, 6, 7, 8) relate to students assigned to Hernandez or students supervised by Hernandez during the make up process.  Hernandez has not asked for leave to amend his complaint to allege other instances of retaliation unconnected to students he was not required to supervise.

    2.  *Qualified immunity*

Because plaintiff has failed to state a cognizable Eighth Amendment claim against the named defendants, the Court need not examine whether the actions of each named defendant were objectively reasonable.  See Saucier v. Katz, 533 U.S. 194, 201 (2001) (if the facts alleged do not establish that the officer's conduct violated a constitutional right, then the qualified immunity analysis need proceed no further and qualified immunity is appropriate).

Based on the foregoing, Defendants motion to dismiss Hernandez's First Amendment retaliation claims against Defendants Barton and Kent are granted.

**E.      Alleged Deprivation of a Property Right Secured by the Fourteenth Amendment Without Due Process of Law**

Hernandez rightly claims that his continuing contract with KISD constitutes a property right and he is entitled to due process before he may be deprived of his employment Cleveland Bd. of Educ. v. Loudermill, 470 U.S. 532, 538-39 (1985) (public employee who could not be terminated other than for cause had property right in continued employment). Fourteenth Amendment procedural due process guarantees the right to notice and a hearing for a public employee with a property right in his employment. Loudermill, 470 U.S. at 546 (1985); Ioannides v. Univ. of Tex. M.D. Anderson Cancer Ctr., 418 Fed. App'x. 269, 270 (5th Cir., Feb. 03, 2011) (per curiam) (designated unpublished).

Hernandez claims that the notice letter from KISD that delineated the reasons for his termination was insufficient because the Independent Hearing Examiner made more findings of fact than the reasons given for termination in the notice letter. The notice letter, D.E. 1-1, Exhibit 15, identified the general bases for termination which were, failure to meet District standards of professional conduct, failure to comply with Board standards of professional conduct, and violation of express directives on five specific dates. In addition, the letter provided 29 examples of the violations. Id. Additionally, before the hearing, Hernandez, who was represented by counsel, had the opportunity to take discovery. Moreover, the hearing was evidentiary and Hernandez had the opportunity to test the District's witnesses and claims.

The Independent Hearing Examiner's Findings of Facts included 40 specific findings related to events surrounding the HOSA Conference and Hernandez' actions after he was told he would not be attending. Of the 29 listed events in the notice letter, at least 16 related to events surrounding the HOSA conference and Hernandez' actions after he was notified he would not be attending. The remaining listed items referenced Hernandez' conduct and insubordination which were also identified as bases for his termination. Hernandez also had the right to further challenge the Hearing Examiner's findings, conclusions and recommendations before the KISD Board before the Board acted on them. Hernandez received all the process he was due. Id.[9]  Defendants' Rule 12(b)(6) motion to dismiss the Fourteenth Amendment claim for violation of due process is GRANTED as to Defendants Castro, Barton and Kent in their individual capacities.

## F.     Alleged Deprivation of Liberty Right Secured by the Fourteenth Amendment

Hernandez claims that "as a tenured teacher [he] was not provided the proper due process because [as a] result of the non-renewal of Plaintiff's employment he has been unable to be re-hired in another school district because of the stigma Plaintiff was given during the District's non-renewal hearings." D.E. 1 at ¶ 53. Hernandez claims that discharge with a stigma gives him a liberty interest in his position and that he was entitled to more process than he received.

---

[9] Several months before his contract ended, the University provided Ioannides notice that he would not be re-hired.  Ioannides administratively appealed both his performance evaluation and the school's employment decision.  During the appeals process Ioannides was afforded a hearing and the opportunity to individually meet with the school's president.  Thus, the University did not violate Ioannides's procedural due process rights.

Id. at 270-71.

If the government discharges an employee amidst allegations of misconduct, the employee may have a procedural due process right to notice and an opportunity to clear his name. Bledsoe v. City of Horn Lake, Miss., 449 F.3d 650, 653 (5th Cir. 2006). "[A] liberty interest is infringed, and the right to notice and an opportunity to clear one's name arises, only when the employee is 'discharged in a manner that creates a false and defamatory impression about him and thus stigmatizes him and forecloses him from other employment opportunities.'" Id. (quoting White v. Thomas, 660 F.2d 680, 684 (5th Cir. 1981)). To determine whether § 1983 provides a remedy for deprivation of liberty on this basis, the plaintiff must show: (1) he was discharged; (2) stigmatizing charges were made against him in connection with the discharge; (3) the charges were false; (4) he was not provided notice or an opportunity to be heard prior to the discharge; (5) the charges were made public; (6) he requested a hearing to clear his name; and (7) the employer denied the request. Bellard v. Gautreaux, 675 F.3d 454, 462 (5th Cir. 2012); Bledsoe, 449 F.3d at 653.

Hernandez's pleading negates several elements of this cause of action. Defendants' did not deny him a hearing. Hernandez admits he had a hearing before the Independent Hearing Examiner. Although Hernandez did not prevail and his employment was terminated by the Board, Hernandez does not allege that his hearing was made public. The notice letter stated that the hearing would be closed unless Hernandez wanted the hearing to be open. D.E. 1-1, Exhibit 15. Furthermore, the letter notifying Hernandez that his contract was terminated indicates that the matter was discussed in a closed session of the school board at which Hernandez was present and represented by counsel

and had the opportunity to contest the Hearing Examiner's findings and recommendations Id. at Exhibit 16. Hernandez admits facts that preclude relief.

Hernandez's claim for deprivation of a liberty interest against defendants Castro, Barton and Kent individually is dismissed pursuant to Defendants' Rule 12(b)(6) motion.

## G.    Defamation

Hernandez alleges generally that during the period of his employment with KISD, the named Defendants defamed him, but does not state when the alleged defamation took place[10] He references Exhibits 17 and 18 in support of his claim.[11]  The exhibits to his complaint suggest that the defamation took place before July 2011 when Interim Principal Kent had conversations with school employees and members of the Kingsville Police Department to obtain a protective order, the California Police and others. D.E. 1 at ¶ 59 and D.E. 1.1 Exhibit 17. All of these communications took place after Hernandez

---

[10]  58. Defendants BARTON, SMALL, and CASTRO, acting in their private capacities made particular false statements about HERNANDEZ.  The Defendants BARTON, SMALL, and CASTRO under color of law made false statements about Hernandez.

  59. Defendants made these statements to further the punishment and retaliation against Hernandez as outlined above in deprivation of his protected rights.  Defendants' defamatory statements that were published also include but are not limited to: (1) That Plaintiff was a threat to other employees; (2) Plaintiff was a threat to students.  And reporting Plaintiff to the Kingsville Police, Anaheim, California Police and National SA; (3) Falsely accusing Hernandez of continuous and flagrant breaking the policies of the District in being insubordinate and unprofessional.  These statements made by Defendants are false and defamatory and Defendants knew them to be false.  EXHIBIT 17, 18.

  60. Defendants knew their statements to be false or acted with reckless disregard to the truth or falsity of the statements.  Defendants made these statements intentionally to save their own jobs with the District; and, defaming Plaintiff was their method of covering up for themselves (Plaintiff's complaint at Para 58-60).

[11] Exhibit 17 is a memo dated June 12, 2011, from Jennifer Kent to Emilio lCastro regarding her contacts with the Kingsville Police Department and KISD personnel regarding efforts to prevent Hernandez from coming onto KISD property.  Each of the described contacts occurred in June 2011.  No Exhibit 18 is attached to Hernandez' Original Complaint.

was placed on administrative leave in May 2011 and before the June 23, 2011, letter to Hernandez notifying him that his contract was to be considered for termination.

The Texas statute of limitations for defamation is found in § 16.002 of the Texas Civil Practice & Remedies Code and it requires that suit be filed within one year of the allegedly defamatory statements.[12] Schirle v. Sokudo USA, L.L.C.; et. al., 484 Fed. App'x. 893, 901-02 (5th Cir., July 31, 2012) (designated unpublished) (dismissing several defamation claims as barred by limitations); Hamad v. Center for Jewish Community Studies, 265 Fed. App'x. 414, 416-17 (5th Cir., Feb. 19, 2008) (per curiam) (designated unpublished) (dismissing defamation claims as barred by limitations).

Hernandez filed this action in February 2013, more than a year after the allegedly defamatory statements were made. Defendants pointed out the limitations issue in their original motion to dismiss filed in March 2013. D.E. 5 at pp. 3, 12-14.

Hernandez responded to Defendants' assertion of the limitations defense in this case: "So much for Defendants claim of being time barred. This is yet another publication by the Defendants of defamatory material about the Plaintiff." D.E. 6 at p. 19. Hernandez' response refers to Defendants' filing of the Independent Hearing Examiner's Decision with their Motion to Dismiss. Id. To the extent that Hernandez claims that filing the Independent Hearing Examiner's Decision in the Court's docket is a republication, the Court finds that it is not. Texas recognizes an absolute judicial immunity from suit for

---

[12] "A person must bring suit for malicious prosecution, libel, slander, or breach of promise of marriage not later than one year after the day the cause of action accrued." Tex. Civ. Prac. & Rem. Code Ann. § 16.002(a) (Vernon 2011).

defamation based  upon court filings. <u>Reagan v. Guardian Life Ins. Co.,</u> 140 Tex. 105, 166 S.W.2d 909, 912 (Tex. 1942); <u>Shanks v. AlliedSignal, Inc.</u> 169 F.3d 988, 992 (5th Cir. 1999) ("We are convinced that Texas law regards its privilege for communications made in the context of judicial, quasi-judicial, or legislative proceedings as a complete immunity from suit, not a mere defense to liability. "). There is no basis for Hernandez' claim that Defendants filing constitutes a republication.

Hernandez' defamation claim against all defendants is dismissed on the grounds that it is barred by limitations.

## VI.   CONCLUSION

Plaintiff's lawsuit is *sua sponte* dismissed on *res judicata* grounds and barred by final, unappealed, judgment entered against him in this court in Cause No. 2:12cv254.

In the alternative, Defendants' motion to dismiss (D.E. 5) is granted in part and denied in part as follows:

1. Defendants' motion to dismiss pursuant to Rule 12(b)(1) for failure to exhaust is DENIED.

2. Defendants' Rule 12(b)(6) motion to dismiss Hernandez' § 1983 claims against KISD is GRANTED.

3. Defendants' Rule 12(b)(6) motion to dismiss Hernandez' § 1983 claims against Emilio Castro, Jerrod Barton and Jennifer Kent in their official capacities is GRANTED. Those claims are dismissed because they duplicate the claims against KISD.

4. Defendants' Rule 12(b)(6) motion to dismiss Hernandez' claim that Defendants Barton, Kent and Castro, in their individual capacities, retaliated against him for exercising his First Amendment rights is GRANTED.

5. Defendants' Rule 12(b)(6) motion to dismiss Hernandez' claim against Defendants Barton, Kent and Castro individually for violation of his due

process rights regarding his property interest in his employment is GRANTED. Hernandez received all the process he was due.

6. Defendants' Rule 12(b)(6) motion to dismiss Hernandez' claim against Defendants Barton, Kent and Castro individually for violation of his due process right to protect his liberty interest in his position is GRANTED. Hernandez failed to allege that the Defendants made the charges against him public and Hernandez received two hearings before he was terminated with an opportunity to be heard.

7. Defendants' motion to dismiss Hernandez' claim of defamation against all defendants is GRANTED. Hernandez' claim is barred by limitations.

Finally, sanctions are not warranted.  All requests by the parties for sanctions are

DENIED.

ORDERED this 24th day of October, 2013.

B. JANICE ELLINGTON
UNITED STATES MAGISTRATE JUDGE